**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

              Plaintiff,

vs.

BRITT LANDER,

              Defendant.

No. CR 11-4098-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING SENTENCING**

_____

**TABLE OF CONTENTS**

I.     **INTRODUCTION**................................................................ 2
    A.    *Factual And Procedural Background*............................. 2
    B.    *Framing The Issue* ..................................................... 3
        1.    *Authority for third–party cooperation* ................... 3
        2.    *Substantial assistance based on third-party cooperation*............ 4
        3.    *Application to Rule 35(b) and USSG § 5K1.1* ...................... 10

II.    **ARGUMENTS OF THE PARTIES**.............................. 11
        1.    *Arguments of the prosecution*........................... 11
        2.    *Arguments of the defendant*............................ 13

III.   *LEGAL ANALYSIS* ..................................................... 15
    A.    *Proper Legal Standard For Third-Party Assistance*........................ 15
        1.    *Text* ...................................................... 15
        2.    *Purpose*.................................................. 17
        3.    *Policy* ................................................... 17
        4.    *Precedents* ............................................... 20
    B.    *Application To Lander*............................................ 21
        1.    *Third-party cooperation as basis for motion* ......................... 22
        2.    *Extent of departure* ..................................... 24

IV.   *CONCLUSION*.............................................................. 25

## I.    INTRODUCTION

This case presents an issue of first impression with a hint but no binding precedent from the United States Court of Appeals for the Eighth Circuit: whether a motion for substantial assistance, pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, may be based in part on substantial assistance from a third-party or surrogate.

### A.    Factual And Procedural Background

Defendant Britt Lander was charged in an Indictment on July 26, 2011 with one count of Conspiracy to Possess with Intent to Distribute Methamphetamine.    On December 28, 2011, Lander pleaded guilty to Count One of the Indictment.    On June 29, 2012, Lander appeared for sentencing.

The primary issue at the sentencing hearing was whether the prosecution's motion for substantial assistance, pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, may be based in part on third-party assistance.    Testimony taken under seal revealed that a significant amount of the assistance provided to the prosecution was not from Lander himself, but from Lander's wife acting on his behalf.    The prosecution moved, pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, for a downward departure below the ten-year mandatory minimum based in part on substantial assistance of Lander's wife.    The prosecution advocated for a 35% reduction due to the "attenuated nature" of the substantial assistance.    The prosecution contended that when a third party, not the defendant himself, provides information, there should be a reduction to the extent of the departure.    The defendant countered that some courts have allowed third-party assistance without a reduction.    Since the issue of whether substantial assistance motions may be based in part on third-party cooperation was an

issue of first impression for me, and counsel discussed the lack of authority in this area, I requested further briefing and continued the sentencing hearing.

## B. Framing The Issue

### 1. Authority for third–party cooperation

The prosecution's motion for substantial assistance in this case is based on 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Title 18 U.S.C. § 3553(e), provides that:

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

In addition, 28 U.S.C. § 994(n) instructs the United States Sentencing Commission to ensure that the guidelines reflect "the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." Section 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. Section 5K1.1 provides a list of factors for courts to consider in determining an appropriate departure:

> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

## 2. *Substantial assistance based on third-party cooperation*

The parties have not identified any Eighth Circuit case law directly addressing this issue of third-party assistance. However, they cited *United States v. Fields*, 512 F.3d 1009, 1011 (8th Cir. 2008), where the Eighth Circuit Court of Appeals analyzed a situation involving a possible third-party assistance agreement, but did not reach the issue of whether a substantial assistance motion may be based in part on third-party assistance. In *Fields*, the Eighth Circuit Court of Appeals held that the prosecution's failure to file a motion for downward departure based on substantial assistance pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 was not improper because the plea agreement indicated that the defendant had not provided any assistance and the prosecution determined that the third–party offered by the defendant was unreliable. *Id*. In dicta, the Eighth Circuit Court of Appeals noted that "a defendant may be able to negotiate a § 3553(e) or § 5K1.1 motion . . . by offering the assistance of a third party." *Id*. The Eighth Circuit Court of Appeals also referenced the prosecution's history of substantial assistance agreements with third parties for a downward departure

4

for defendants. *Id.* at 1012 n.2. ("[I]n the past [the prosecution] has entered into agreements with defendants for the assistance of a third party in exchange for filing a motion for downward departure for the defendant.").

The issue of third-party substantial assistance has not been squarely decided by any Courts of Appeals, although the parties cite six district courts that have considered third-party substantial assistance. The issue of third-party substantial assistance was first addressed in *United States v. Doe*, 870 F. Supp. 702 (E.D. Va. 1994) (Ellis, J.). The court in *Doe* granted the prosecution's Rule 35(b) motion for reduction based on the defendant's son's assistance. The court in *Doe* articulated four factors in deciding whether a defendant may benefit from a motion for reduction of sentence under Rule 35(b) or U.S.S.G. § 5K1.1. The four-part test required that motions may be based on surrogate assistance in the following circumstances:

> (1) The defendant plays some role in instigating, requesting, providing, or directing the assistance; (2) the government would not have received the assistance but for the defendant's participation; (3) the assistance is rendered gratuitously; and (4) the court finds that no other circumstances weigh against rewarding the assistance.

*Doe*, 870 F. Supp. at 708. First, the court in *Doe* conducted a textual analysis of Rule 35(b), finding that the language "defendant's . . . substantial assistance" indicated that the defendant must play a role. *Id.* at 707 ("Rule 35(b) is not triggered by surrogate assistance when the defendant himself refuses to cooperate."). Second, the court in *Doe* relied on the policy underlying Rule 35 that a defendant's assistance must actually further the prosecution's efforts and concluded that "but for the defendant's efforts, the surrogate would not have come forward." *Id.* Third, the court in *Doe* reasoned that "the assistance must be provided gratuitously and from a non-remunerative desire to help the defendant." *Id.* at 708. This prong reflected the court's concern in *Doe* for potential fraudulent cooperation arising from a defendant purchasing assistance. *Id.* at

707–708. This requirement was intended to prevent situations "where a defendant provides some form of compensation to a surrogate as an inducement for the assistance." *Id.* at 708 n.12. Finally, the court in *Doe* emphasized the necessity of the court's role in preventing improper uses of substantial assistance. *Id.* at 708.

In *United States v. Bush*, 896 F. Supp. 424 (E.D. Pa. 1995), the court applied the *Doe* factors, denying the prosecution's Rule 35(b) motion when the defendant's paramour provided substantial assistance for the defendant's benefit, but the defendant took no action to facilitate the paramour's assistance. The court in *Bush* determined that the defendant must do more than merely play "some role" in the surrogate's substantial assistance; the defendant's involvement must be "material." *Id.* at 428. The court in *Bush* determined that the defendant was "the least likely candidate for sentence reduction based on substantial assistance" because the defendant merely nodded her head when her paramour announced his decision to cooperate with the prosecution, a physical gesture that failed to even constitute "some role." *Id.*

In *United States v. Abercrombie*, 59 F. Supp. 2d 585, 590 (S.D. W. Va. 1999), the court agreed with the court in *Doe* that a defendant may receive the benefit of assistance rendered in part by a third person, and it denied the prosecution's motion under § 5K1.1, concluding that "the assistance personally provided by [the defendant] was not 'substantial' in its own right." The defendant attempted to assist the prosecution, but his undercover purchases were unsuccessful. *Id.* at 587. However, the defendant's girlfriend provided substantial assistance to the prosecution in the investigation of two drug dealers, and the court in *Abercrombie* allowed the defendant to benefit from her substantial assistance pursuant to 18 U.S.C. § 3553(b),[1] instead of § 5K1.1. Since the Supreme Court declared § 3553(b) unconstitutional in *United States*

---

[1] 18 U.S.C. § 3553(b) was invalidated by *United States v. Booker*, 543 U.S. 220 (2005).

*v. Booker*, 543 U.S. 220 (2005), the decision in *Abercrombie* is not as useful to my analysis as other decisions addressing the issue of third-party substantial assistance. *See United States v. McMillion*, 528 F. Supp. 2d 620, 623 (S.D.W. Va. 2007) (concluding that "[w]hile the *Abercrombie* decision is instructive . . . the lasting impact of *Abercrombie* appears to have been altered by the Supreme Court's decision in [*Booker*]").

In *United States v. Scott*, No. 98-1793, 2005 WL 741910 (D. Minn. Mar. 31, 2005), the court denied the prosecution's Rule 35(b) motion "in this case" due to concerns that the third party, defendant's acquaintance, was coerced into cooperating by gang members. The FBI believed the defendant or others may have ordered the third party to provide assistance. *Id.* at *3. The court in *Scott* concluded that "the language of Rule 35(b) does not easily lend itself to construction of motions based on third-party agreements." *Id.* at *2. The court in *Scott* also discussed the negative policy implications of allowing Rule 35(b) reductions based on third-party substantial assistance, such as purchasing assistance and coercion. *Id.* While the court in *Scott* expressed strong, and in my view substantially misplaced, skepticism about third-party assistance agreements, it did not reject third-party assistance entirely. *Id.* (denying Rule 35(b) motion "in this case"). But a fair reading of the *Scott* decision indicates that the door to third-party substantial assistance was shut quite hard. Most of the parade of horribles discussed in *Scott* are of lessor concern than the far greater problems already in existence in the substantial assistance status quo. Cooperating witnesses already have huge prosecutorial incentives to lie and embellish their testimony in exchange for whopping reductions in their sentences. According to the Unites States Sentencing Commission, the average reduction for § 5K1.1 substantial assistance in drug

trafficking cases was 45.5% in the second quarter of 2012.[2]  Allowing for third-party
substantial assistance does very little to add to this mess.  I have sentenced over 3000
defendants over 19 years, spanning four federal district courts, and this is my first
encounter with the issue.  The court in *United States v. Prokos*, 441 F. Supp. 2d 887,
892 (N.D. Ill. 2006) (Holderman, J.), precisely recognized this when Judge Holderman
wrote:

> In determining the properly legal standard, this court
> disagrees with the *Scott* court's conclusion that surrogate
> third-party agreements must be universally rejected on
> public policy grounds. Public policy concerns are present in
> any cooperation agreement regardless of whether a third-
> party is involved. In every case there is a risk that the
> defendant will seek a better position with the Government by
> lying under oath and fabricating evidence to create new
> information with which to barter, or seek new information
> through bribery or coercion. Congress decided that, as a
> matter of public policy, the benefits society obtains by
> allowing Government counsel to seek and obtain the
> cooperation of persons who have committed crimes
> outweigh the detriments to society when Congress enacted
> 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n).

441 F. Supp. 2d at 892.

In *Prokos*, the court accepted a proposed plea agreement consisting of a
reduction of defendant's sentence based on assistance rendered by her fiancé.  *Id.* at
898.  The court in *Prokos* rejected the *Doe* factors and analyzed the issue under
contract law.  *Id.* at 892–893 (concluding "that the law of contracts, altered at certain
points to satisfy constitutional, statutory, and Guidelines public policy concerns is a

---

[2] U.S. Sentencing Commission Preliminary Quarterly Data Report: 2nd Quarter
Release 19 tbl.7 (2012), *available* at http://www.ussc.gov/Data_and_Statistics/Federal_
Sentencing_Statistics/Quarterly_Sentencing_Updates/USSC_2012_2nd_Quarter_Report.
pdf.

better analytical framework for evaluating [third-party cooperation] agreements."). Following the Seventh Circuit's instruction to interpret plea agreements between the government and defendant under contract law, the court in *Prokos* analyzed the "defendant's substantial assistance facilitated through a third-party surrogate [as] part of the consideration supporting the agreement between the Government and the defendant." *Id.* at 893. The court in *Prokos* concluded that the defendant "was needed to facilitate" the third-party cooperation since the defendant's fiancé was distrustful of the government and the defendant spent several months convincing her fiancé to cooperate. *Id.* at 897. The court in *Prokos* held that there was "a bargained-for exchange involving [defendant, her fiancé] and the Government and that [defendant had] independently contributed to this exchange." *Id.* at 895.

In *United States v. McMillion*, 528 F. Supp. 2d 620, 625 (S.D.W. Va. 2007), the court applied the *Doe* factors and granted the prosecution's motion under Rule 35 based on defendant's assistance and defendant's daughter's assistance. First, the defendant substantially assisted the prosecution by providing the names of oxycodone suppliers. *Id.* at 624. Next, the defendant's daughter substantially assisted the prosecution by making undercover purchases for the prosecution. *Id.* The court in *McMillion* expanded the *Doe* framework to emphasize the requirement that the defendant provide substantial assistance on his own and that the third-party assistance must be substantial. *Id.* at 624–25. The court in *McMillion* added to the *Doe* test and set forth this new test:

(1) Whether the defendant provided substantial assistance to the Government apart from the efforts of any third party. If the defendant, in his or her own right, did not provide substantial assistance of the Government, the inquiry ends.

(2) Whether the defendant played some role in instigating, requesting, providing, or directing the third party assistance.

(3) Whether the assistance rendered by the third party is sufficient to justify a sentence reduction. In considering this element, the Court is to weigh heavily the Government's evaluation of the usefulness of the assistance rendered.

(4) Whether the assistance provided by the third party could have been received absent the Government's ability to offer a motion for sentence reduction as an incentive. The Court is to weigh heavily the Government's evaluation of the evidence with respect to this element as well.

(5) Whether the assistance was rendered gratuitously.

(6) Finally, whether any other circumstances weigh against rewarding the assistance.

528 F. Supp. 2d. at 624–25.

In addition to the cases identified by the parties, I also considered *United States v. Clark*, No. 5:99–cr10–Oc–10 GRJ, 2006 WL 4877554 (M.D. Fla. Jul. 20, 2006), which held that a defendant must have personal involvement in a material and substantial way in order to benefit from third-party assistance. The court in *Clark* denied the prosecution's Rule 35(b) motion based on the defendant's spouse's substantial assistance. Although the defendant's spouse made cocaine purchases during meetings arranged by the defendant that led to numerous arrests, the court in *Clark* found that the defendant's own assistance was not substantial. *Id*. In sum, the court in *Clark* held that merely recruiting a third party to provide assistance was insufficient. *Id*. at *2.

### 3. *Application to Rule 35(b) and USSG § 5K1.1*

While some of the decisions the parties rely on contain a motion pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure and some contain a U.S.S.G. § 5K1.1 motion, the motions have equal effect on the analysis of this issue. *United States v. Marks*, 244 F.3d 971, 973 n.1 (8th Cir. 2001) (relying on cases decided under §

5K1.1 and 18 U.S.C. § 3553(e) in analyzing the application of Rule 35(b)). Although the prosecution filed a motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)—not Rule 35(b)—the motions are similar and stem from identical policy rationales. *See Doe*, 870 F. Supp. at 704 n.1 (comparing *United States v. Perez*, 955 F.2d 34, 34 (10th Cir. 1992), and *United States v. Doe*, 940 F.2d 199, 203 n.7 (7th Cir. 1991)). The only distinction is the timing: Section 5K1.1 allows a reduction in a defendant's sentence for substantial assistance prior to sentencing, while Rule 35(b) permits a reduction for substantial assistance provided after sentencing. *Id.* (citing *United States v. Martin*, 25 F.3d 211, 215–16 (4th Cir. 1994)). Thus, I base my analysis on cases involving both motions, and my resolution of this issue regarding the prosecution's motion pursuant to § 5K1.1 and § 3553(e) applies equally to motions pursuant to Rule 35(b).

## II.    ARGUMENTS OF THE PARTIES

### 1.    Arguments of the prosecution

The prosecution's position is that the Court should grant its motion for downward departure below the statutory mandatory minimum sentence. However, the prosecution contends that the extent of the departure should be "tempered by the fact that the most significant assistance for which defendant is being given credit was accomplished by a third party." Government's Brief at 1.

While the prosecution was unable to point to any Eighth Circuit law directly addressing the issue of whether third-party cooperation can form the basis for a substantial assistance motion, it finds tacit approval from this circuit in *Fields*. 512 F.3d at 1012. The prosecution also points to the reference in *Fields* of previous usage of surrogate assistance. *Id.* at 1012 n.2. In response to the court's inquiry about guidelines or advisory input on this issue, the prosecution states that the United States

Attorney's Offices and the Department of Justice have not issued any guidelines or advisory input about third-party cooperation as a basis for a substantial assistance motion.

The prosecution relies on the analysis of district courts to determine how courts have evaluated the issue. The prosecution acknowledges that some courts have found that granting substantial assistance motions based on third-party cooperation is against public policy, *United States v. Scott*, Case No. CRIM. 98-1793ADMAJB, 2005 WL 741910 (D.Minn. Mar. 31, 2005), but it contends that most courts have been willing to grant the motion. The prosecution discusses the framework in *Doe*, as well as alternative considerations presented in *Prokos* and *Abercrombie*. After a cursory overview of caselaw, the prosecution asserts that third-party cooperation is an appropriate basis for the motion.

The prosecution acknowledges that the courts of appeals have been silent regarding the appropriate amount of credit for third-party assistance. The prosecution argues that "third-party cooperation is not the same as personal cooperation." Government's Brief at 4. To support this position, the prosecution analyzes the § 5K1.1 considerations, arguing that the first and fifth factors apply neutrally to the defendant and the third party, but the remaining factors apply incongruently to the third party.

Considering § 5K1.1(a)(1), the prosecution deems the significance and usefulness identical, whether provided by Lander or a third party. Consequently, the prosecution contends that Lander should receive full credit regarding those factors. Similarly, under § 5K1.1(a)(5), the prosecution reasons that timeliness is an identical factor. However, under § 5K1.1(a)(2), the prosecution contends that it would be "incongruent to award [Lander] the same level of credit as if it [were] his truthfulness, completeness, and reliability which were being relied upon," when it was actually his

12

wife's active cooperation. Likewise, the prosecution contends that it would be incongruent to award Lander the same credit for the nature and extent of defendant's cooperation (§ 5K1.1(a)(3)) and risk of injury (§ 5K1.1(a)(4)). In sum, the prosecution acknowledges that a defendant could earn equal credit for a third party's cooperation, but in this case, Lander's benefit should be less to reflect his "reduced role and level of risk in providing assistance." *Id.* at 5.

### 2. *Arguments of the defendant*

Lander concurs with the prosecution's position that the I should grant the prosecution's motion for downward departure based in part on third-party substantial assistance. Lander relies on *Fields* to assert that third-party cooperation may be the basis for a downward departure for substantial assistance. Lander looks to the *Doe* test for guidance and argues that third-party assistance is a proper basis for granting a motion for substantial assistance.

However, Lander disagrees with the prosecution as to the extent of the departure, requesting "that the Court grant [him] a downward departure equal to what the Defendant would have received had he provided the assistance personally, as opposed to through a third party." Defendant's Brief at 7. Lander agrees with the prosecution that the "significance and usefulness" of the assistance pursuant to § 5K1.1(a)(1) is identical whether provided personally or via a third party. However, Lander argues that he provided a significant amount of information himself that he shared with the prosecution in a post-*Miranda* interview without counsel and a subsequent proffer interview. Therefore, Lander contends that the "significance and usefulness of the cooperation in total" weighs more than the cooperation of the third party alone. *Id.* at 3. Regarding timeliness, under § 5K1.1(a)(5), Lander agrees with the prosecution that he should earn full credit for timeliness. Yet, Lander argues that he should be given "more credit for his timeliness than just the third party's assistance

standing alone." *Id.* He highlights the timeliness of his own assistance, including a post-*Miranda* statement without the assistance of counsel after his arrest on state charges and a proffer to the prosecution after his indictment on federal charges, which was timelier than the third–party assistance. *Id.*

Lander disagrees with the prosecution's analysis under the remaining factors. Lander contends that "[he] should receive equal credit as the third party" for "truthfulness, completeness, and reliability of any information" (§ 5K1.1(a)(2)); "the nature and extent of the assistance" (§ 5K1.1(a)(3)); and "risk of injury to the Defendant or his family" (§ 5K1.1(a)(4)). *Id.* at 4. Lander contends that his involvement in securing the third-party cooperation made him responsible for the "truthfulness, completeness, and reliability" of the assistance. Regarding the "nature and extent," under § 5K1.1(a)(3), Lander applies the "but for" analysis articulated in *Doe* and asserts that, but for Lander's role, the third party would not have provided assistance. *Id.* at 5. Lander supports his argument that "surrogate assistance should be treated equally" on the assertion in *Doe* that "[b]ecause Rule 35(b) and § 5K1.1 use the lure of a reduced sentence simply as a mechanism to achieve greater prosecutorial success, those provisions are arguably satisfied whenever the Government receives substantial assistance on behalf of a defendant, regardless of whether the defendant alone provides the assistance." *Id.* at 5 (quoting *Doe*, 870 F. Supp at 707). Regarding the risk of injury, under § 5K1.1(a)(4), Lander argues that he should be given equal credit because the risk of injury to the defendant's family "would exist to the same extent in this case, as if the defendant had been providing the active cooperation himself." *Id.* at 6. In sum, Lander asks me to grant the prosecution's motion and requests that I grant him a downward departure "equal to what [he] would have received had he provided the assistance personally, as opposed to a third party." *Id.* at 7.

### III.    LEGAL ANALYSIS

####   A.    *Proper Legal Standard For Third-Party Assistance*

To determine whether third-party assistance may be part of a proper basis for a substantial assistance motion, I will independently analyze the text, purpose, policy, and precedents of third-party substantial assistance motions. The Eighth Circuit Court of Appeals employs "basic rules of statutory construction when interpreting the Guidelines." *United States v. Hackman*, 630 F.3d 1078, 1083 (8th Cir. 2011). Statutory interpretation "begins with the plain language of the statute." *Public Water Supply Dist. No. 3 of Laclede County, Missouri v. City of Lebanon, Missouri*, 605 F.3d 511, 517 (2010) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)). If the plain language of the statute is ambiguous, the Eighth Circuit Court of Appeals considers "the purpose, the subject matter and the condition of affairs which led to its enactment." *United States v. S.A.*, 129 F.3d 995, 999 (8th Cir. 1997) (quoting *Lambur v. Yates*, 148 F.2d 137, 139 (8th Cir. 1945)).

####   1.    *Text*

Although the parties do not base their arguments on a textual analysis, I will begin by analyzing the language of § 5K1.1 and § 3553(e). The § 5K1.1 factors do not define the terms "the defendant" and "the defendant's assistance," and § 3553(e) does not define the language, "a defendant's substantial assistance." The language suggests that it allows for information provided to the prosecution from the defendant personally.

According to general principles of statutory interpretation, a statute is ambiguous if it is "'capable of being understood in two or more possible senses or ways.'" *United States v. White Plume*, 447 F.3d 1067, 1074 (quoting *Chicksaw Nation v. United States*, 534 U.S. 84, 90 (2001)). While "defendant's assistance" may appear

straightforward, there is ambiguity in the language because it does not clarify the scope of the defendant's assistance. It is not clear whether the defendant may provide assistance by facilitating or procuring a third party to provide assistance. As the *Doe* court explained, the language is "infected with ambiguity" because it "does not define how the defendant may come by the information he uses, what course or methods he may use, or whose aid he may enlist to obtain the information." 870 F. Supp. at 705. I agree with the *Doe* court's reasoning behind the first and second elements of the *Doe* test that the defendant must "play some role" in the third-party assistance. *Id.* at 707. While the language of § 5K1.1 and § 3553(e) clearly requires the defendant to be involved in cooperation with the prosecution to provide substantial assistance, the manner and methods for obtaining information are broad enough to allow for third-party assistance facilitated by the defendant. The Eighth Circuit Court of Appeals has held that "[w]here there are two plausible readings of a guideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence." *United States v. Oetken*, 241 F.3d 1057, 1060 (8th Cir. 2001); *see United States v. Pharis*, 176 F.3d 434, 436 (8th Cir. 1999) ("Where ambiguities [in the Sentencing Guidelines] exist, the rule of lenity dictates that the ambiguity be resolved in favor of the defendant."). Therefore, applying the Rule of Lenity to the ambiguity in the "defendant's assistance," third-party assistance should be allowed in order to construe ambiguities favorably to Lander.

While I have some hesitation with expanding the plain meaning of the language, "the defendant's assistance," I find that third-party assistance may be reasonably interpreted as a method of "the defendant's assistance." Further, the United States Sentencing Commission has taken no action after several courts—beginning with *Doe* in 1994—have interpreted "the defendant's assistance" to include third-party assistance.

### 2. Purpose

The Eighth Circuit Court of Appeals has held that "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute." *Public Water Supply Dist. No. 3 of Laclede County, Missouri*, 605 F.3d at 517 (quoting *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006)). The primary purpose of § 5K1.1—as well as Rule 35(b)—is to successfully prosecute criminals for their crimes. *See Doe*, 870 F. Supp. at 706. Exchanging a sentence reduction for substantial assistance allows the prosecution to gather significant information to prosecute other individuals for illegal conduct. As the commentary to § 5K1.1 explains, the purpose of a departure for substantial assistance is not to reward the defendant for accepting responsibility. *Compare* § 5K1.1 (intended to aid prosecution's efforts to prosecute criminal activities of other individuals) *with* § 3E1.1 (intended to recognize defendant's acceptance of responsibility). Therefore, "the central goal of § 5K1.1 is to encourage defendants to provide effective assistance in the Government's investigation and prosecution efforts, not to reward a defendant's good intentions." *Doe*, 870 F. Supp. at 707. The court in *Doe* reasoned that "because Rule 35(b) and § 5K1.1 use the lure of a reduced sentence simply as a mechanism to achieve greater prosecutorial success, those provisions are arguably satisfied whenever the prosecution receives substantial assistance on behalf of a defendant, regardless of whether the defendant alone provides the assistance." *Id.* at 707. I agree with the court's assessment in *Doe* that allowing third-party assistance upholds the underlying purpose of § 5K1.1.

### 3. Policy

The "long established plain language rule of statutory interpretation" requires "examining the text of the statute as a whole by considering its context, object, and policy." *American Growers Ins. Co. V. Federal Crop Ins. Corp.*, 532 F.3d 797, 803

(8th Cir. 2008) (quoting *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 899 (8th Cir. 1999)).

While there is a risk of abuse in any cooperation agreement, Congress determined that the benefits of allowing the prosecution to cooperate with defendants outweigh the potential harm to society. *See* § 3553(e); § 994(n). The court in *Prokos* analyzed the inherent public policy concerns in any cooperation agreement: "In every case there is a risk that the defendant will seek a better position with the Government by lying under oath and fabricating evidence to create new information on with which to barter, or seek new information through bribery or coercion." 441 F. Supp. 2d at 892.

In *Doe*, the court cautioned against possible public policy concerns involving purchasing surrogate assistance. 870 F. Supp. at 707–708 ("[A] small business might spring up to develop and provide substantial assistance on behalf of a defendant-client for a price"). Just as Judge Ellis predicted in *Doe*, it was soon discovered that attorneys were making deals to facilitate third-party assistance for a price. *See Scott*, 2005 WL 741910, at *2 (citing *United States v. Baum*, 32 F. Supp. 2d 642, 643 (S.D.N.Y. 1999) and *United States v. Fierer*, 1997 WL 445937 (N.D. Ga. 1997)). In 1997, a prominent Atlanta attorney, Robert Fierer, was indicted and pleaded guilty to obstruction of justice charges for conspiring against the prosecution to sell third-party cooperation. *United States v. Fierer*, 1997 WL 445937 (N.D. Ga. 1997). Two years later, Harvey Baum, a Manhattan defense attorney, pleaded guilty to obstruction of justice for misleading the government about the relationship between his client and a third-party cooperator. *See United States v. Baum*, 32 F. Supp. 2d 642, 643 (S.D.N.Y. 1999); *In re* Baum, 691 N.Y.S.2d 455, 455 (1999). These examples of abuse illustrate the type of third-party assistance that contradicts the purpose of the sentencing scheme. *See Doe*, 870 F. Supp. at 708 (concluding that it would be unjust

to allow "a wealthy person to purchase a lighter sentence than that of an indigent"). As Judge Ellis cited the famous language of *Griffin v. Illinois* in *Doe*, "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Id.* (quoting *Griffin v. Illinois*, 351 U.S. 12, 19 (1956)).

The court in *Doe* considered these public policy concerns with prong three in its test: "(3) the assistance is rendered gratuitously." *Doe*, 870 F. Supp. at 708. The term "gratuitous" in prong three of the test is slippery.[3] I share the same concerns as the court in *Prokos* when it acknowledged that "all third-party's assistance will likely be motivated by some type of self-interest, including . . . continuing a romantic relationship and family kinship." *Prokos*, 441 F. Supp. 2d at 894 n.8. I agree with the court's underlying concerns in *Doe* that the wealthy should not be permitted to purchase a substantial assistance reduction. However, a spouse may offer third-party assistance for many reasons, including keeping the defendant out of prison so he or she can contribute financially to the family, which might be deemed to fail the gratuitous requirement.

The court in *Scott* expressed great concern for the potential abuse in third-party assistance, concluding that "[a]lthough the public may benefit greatly from assistance provided by individuals involved in criminal enterprises, the appropriate balance between preventing other criminal activity and reducing the defendants' sentences is disturbed when defendants mitigate the consequences of their acts through the aid of third parties." *Scott*, 2005 WL 741910, at *3. While the balance may be upset when third-party assistance is abused, this perspective ignores the positive use of third-party assistance in other cases that allows the prosecution to further its prosecutorial efforts.

---

[3] Gratuitous is defined by the Oxford English Dictionary online as "freely bestowed or obtained; granted without claim or merit; provided without payment or return; costing nothing to the recipient; free." *See* http://www.oed.com/view/Entry/80966?redirectedFrom=gratuitous#eid.

The use of third-party assistance in *Doe*, *Abercrombie*, *Prokos*, and *McMillion* did not upset the balance, but allowed the defendant to facilitate assistance and provided the prosecution with significant information. The risk of abuse in any type of cooperation agreement is disconcerting, but the risk of potential abuse does not make all third-party agreements flawed.

### 4. Precedents

In *Fields*, the Eighth Circuit Court of Appeals could have disallowed third-party substantial assistance, but it came to a decision without reaching the issue. 512. F.3d at 1009. The analysis of the Eighth Circuit Court of Appeals analysis appears to presume that third-party assistance is a proper basis for a substantial assistance motion. First, the Eight Circuit Court of Appeals lists both providing personal assistance to local authorities and offering the assistance of a third party as methods for a defendant to negotiate a § 3553(e) or § 5K1.1 motion. *Id.* at 1012. Second, the Eighth Circuit Court of Appeals notes that the prosecution has previously made agreements with defendants for third-party assistance in exchange for filing a motion for downward departure for the defendant. *Id.* at 1012 n.2. Although the Eighth Circuit Court of Appeals has not taken a position on the issue, it has acknowledged that there is a practice of forming agreements with third parties. This backdrop of acquiescence in the Eighth Circuit supports third-party assistance as part of a basis for the substantial assistance motion.

Among the seven district court decisions addressing the issue of third-party assistance, four courts—*Doe*, *Abercrombie*, *Prokos*, and *McMillion*—granted a motion for substantial assistance based on third-party cooperation. The court in *Bush* denied a motion for substantial assistance, finding the defendant had not played a material role. The court in *Clark* denied a motion for substantial assistance, finding the defendant's own assistance was not substantial enough. The court in *Scott* denied a motion for

substantial assistance because the third party was not reliable and posed policy concerns. While some courts have described the case law on this issue as a "split," *United States v. Jordan*, No. 5:03-cr-6 (HL), 2008 WL 2302681 (M.D. Ga. May 29, 2008) at *3, none of the decisions have rejected third-party assistance entirely. *See United States v. Scott*, No. 98-1793, 2005 WL 741910 (D. Minn. Mar. 31, 2005) at *2. The district courts have applied different analyses, molding the *Doe* framework over time to address new facts. Thus, the case law supports allowing a motion based on third-party substantial assistance.

In sum, an analysis of the text, purpose, policy, and precedents relating to this issue supports motions for substantial assistance based on third-party cooperation. The language of § 3553(e) and § 5K1.1 is not restrictive, but leaves the method of the defendant's assistance open. A motion for substantial assistance based on third-party assistance is in line with the underlying purpose of § 3553(e) and § 5K1.1 because it advances the prosecutorial efforts of the government. While there are public policy concerns in any cooperation agreement, they do not outweigh the use of third-party assistance. Thus, third-party assistance is a proper basis, in part, for a substantial assistance motion, at least where the defendant also provides substantial assistance.

### B.    *Application To Lander*

After determining that third-party assistance may be a proper basis for a substantial assistance motion, I must determine whether Lander has met the requirements for third-party substantial assistance in this case.[4] Here, Lander's wife

---

[4] Since Lander provided material substantial assistance on his own, I do not address the knotty issue of whether third-party assistance by itself could qualify for a substantial assistance motion or whether a defendant who provided assistance that was not deemed substantial by the prosecution could mount the "substantial" hurdle with the addition of some third-party assistance.

substantially assisted the prosecution by providing a significant amount of information. The parties seek a downward departure in Lander's sentence based in part on the substantial assistance provided by Lander's wife.

### 1. *Third-party cooperation as basis for motion*

The court in *Doe* has provided a valuable framework to consider surrogate assistance. Expanding Judge Ellis's four-part test and the subsequent case law, I adopt the following test for use in determining whether a Rule 35(b) or § 5K1.1 motion may be based on third-party substantial assistance:

> (1) Did the defendant play a material role in requesting, encouraging, facilitating, or persuading a third party to provide substantial assistance to the prosecution?
>
> (2) Was the defendant a motivating factor for the third party to provide substantial assistance to the prosecution?
>
> (3) Did either the defendant or the third party act with any impermissible motivation that undermines the court's confidence in the integrity of the substantial assistance process or the information provided?
>
> (4) Are there any other circumstances that weigh against granting the substantial assistance motion?

First, I molded prong 1 in the *Doe* test to require more than just a "role", but a "material role," as the court in *Bush* suggested. 896 F. Supp. at 428. Second, I changed prong 2 in the *Doe* test to ensure that the defendant's actions played an important causation role in the third party's substantial assistance. This furthers the textual requirement of the defendant playing an important role in the substantial assistance. Third, I was concerned with the ambiguity in prong 3 of the *Doe* test stemming from the word "gratuitously". In my revised test, I construct a broad public policy prong to cover a wider scope of substantial assistance abuses and to ensure the integrity of the process and information provided. I retained prong 4 of the *Doe* test

for the final prong of my revised test. This final prong is significant because it reflects the judge's discretion, guided by the § 5K1.1(a) factors, in deciding substantial assistance motions. It also provides the sentencing judge with discretion to reject third party assistance for other reasons not covered by the first three prongs. Finally, it is important to remember that there is an additional safeguard for third party substantial assistance. The Executive Branch of the federal government has the sole power to make substantial assistance motions. Presumably, they would not make such motions in any case where there were problems like the court was concerned about in *Scott,* or other concerns that affect the integrity of the process or information provided.

Here, Lander satisfies all of the elements of my revised test. First, Lander played a material role in requesting that his wife provide substantial assistance on his behalf. This case is distinguished from *Bush* because Lander actively asked his wife to provide assistance. *See Bush*, 896 F. Supp. at 428. This is not a case where a third party acted independently. This case is also distinguished from *Clark* because Lander did not merely recruit his wife to provide assistance, but he was personally involved in a "material and substantial way" by providing his own information and facilitating his wife's assistance. *Clark*, 1006 WL 48775544 at *2. Lander provided reliable information about his own methamphetamine dealings the night he was arrested. Lander also provided information as part of his proffer, including around 8 to 10 names of possible drug targets. Second, Lander was a motivating factor in his wife's decision to provide substantial assistance. A task force officer, Agent Stallman, explained at the sentencing hearing that the third party would not have participated if Lander had not facilitated the cooperation. Lander's wife provided information to benefit Lander. When Lander facilitated his wife's cooperation, he was the catalyst to generating her assistance. Third, there is no evidence that Lander or his wife acted with any impermissible motivation. Also, I am not aware of any other circumstances that would

weigh against granting the motion for substantial assistance. Finally, most importantly, there are no concerns that affect the integrity of the substantial assistance process or the information obtained.

### 2. *Extent of departure*

Although the prosecution acknowledges that a defendant could "be given equal full credit for cooperation of a third party," it concludes that Lander should be granted "a lesser benefit . . . simply to reflect his reduced role and level of risk in providing assistance." Government's Brief at 5. Without citing any authority, the prosecution's analysis suggests that it would be difficult, if not impossible, for a defendant to earn full credit for a third party's assistance. I disagree with this argument and conclude that a defendant *may*, but is not necessarily entitled to, earn full credit based in part on the substantial assistance of a third party. This is entirely within the sentencing judges' discretion based on the judges' application of the 5K1.1 factors and the facts surrounding obtaining the third-party assistance and the substance of that assistance.

The § 5K1.1 factors apply to Lander's wife's substantial assistance because her third-party assistance is part of Lander's assistance as a whole. First, under § 5K1.1(a)(1), Lander's wife's cooperation with the prosecution was very significant and useful because she provided new information about an individual drug trafficker's activities that they did not already have. At the sentencing hearing, Agent Stallman described her efforts as "huge." Second, under § 5K1.1(a)(2), Agent Stallman always found Lander's wife's information truthful and reliable. Therefore, this case is distinguished from *Fields* because Lander's wife's information was always reliable, unlike the third party in *Fields* who was "unreliable and impeachable." *Fields*, 512 F.3d at 1012. Third, under § 5K1.1(a)(3), she was able to provide a great deal of information that law enforcement had not been able to find before she cooperated. Fourth, under § 5K1.1(a)(4), Lander's wife put herself at risk of injury in gathering

information for the prosecution. Fifth, under § 5K1.1(a)(5), the prosecution has not argued that Lander's wife's assistance was untimely.

Thus, Lander was the only motivating factor for substantial assistance rendered by his wife, and an analysis with the § 5K1.1 factors shows that she played a valuable role in providing assistance on Lander's behalf.

## IV.    CONCLUSION

For the reasons set forth above, I grant the prosecution's motion for substantial assistance based in part on third-party assistance.  I will determine the appropriate sentence after hearing from counsel and Lander at the conclusion of the sentencing hearing scheduled for October 24, 2012.

**IT IS SO ORDERED**.

**DATED** this 23rd day of October, 2012.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA